22533

Re In the Matter of Julian Hampden MORGAN, Jr.

(343 S. E. (2d) 29)

Supreme Court

*Attorney General T. Travis Medlock, Sr., Asst. Attorney General Richard B. Kale, Jr.,* and *Deputy Atty. Gen. William K. Moore,* Columbia, *for complainant.*

*Howard Carlisle Bean,* Spartanburg, *for respondent.*

Heard Dec. 16, 1985.

Decided April 21, 1986.

*Per Curiam:*

This is an attorney grievance proceeding. Respondent is charged with violations of three sections of the Code of

Professional Responsibility. The Executive Committee recommended a private reprimand.

## FACTS

In 1978, Dr. John Tate, a Spartanburg dentist, deeded his home to his four daughters, one of whom was a minor. However, he continued to occupy the home with his wife and the minor.

In 1982, Dr. Tate, in financial difficulty, employed Respondent to aid in effecting a sale of the home which was threatened with mortgage foreclosure. The three adult daughters executed powers of attorney authorizing Respondent to sell the house. Respondent was to receive 8% of the sale price as his fee.

From January through July, 1982, Respondent attempted to market the residence. During this period he dealt exclusively with Dr. Tate. They discussed needed house repairs and the status of negotiations with potential purchasers.

In August, 1982, Respondent signed a contract of sale with a Mr. and Mrs. Spaugh. The agreement was contingent upon court approval for sale of the minor's interest. Respondent was also to receive $500 from the Spaughs in this transaction, the $500 to be deducted from Respondent's 8% fee from the Tate daughters.

When Dr. Tate and his adult daughters learned of the Spaugh contract, the daughters revoked their powers of attorney as they felt the sales price was too low.

The contract provided for surrender of the home. When the Tates and minor daughter failed to vacate, Respondent, as party plaintiff, brought an eviction action in Magistrate's Court. On the same day he filed an action in Circuit Court to compel the minor to convey her one-fourth interest to the Spaughs.

Both actions were dismissed within two months.

On August 13, 1982, Respondent filed a *lis pendens* against the property, which he later withdrew.

In October, 1982, the daughters sold the home to a Dr. and Mrs. Bass. Sale of the minor's interest was approved by the Circuit Court.

In November, 1982, Respondent brought an action against the three adult daughters in *quantum meruit* for compensa-

tion for his legal services. The Circuit Court granted a demurrer. The Court of Appeals reversed. *Morgan v. Tate*, 85-MO-026 (filed May 30, 1985).

At a jury trial upon remand, a mistrial was declared. In a second trial, the action was dismissed. Appeal to this Court of the dismissal has been filed.

## A. *Violations Charged*

The Executive Committee found, and we agree, that Respondent's conduct violated:

> *D.R. 5-104(A)*, which prohibits a lawyer from entering into a business transaction with a client if they have differing interests and if the client expects the lawyer to exercise his professional judgment in the matter for the protection of his client, unless the client has consented after full disclosure;
> *D.R. 5-105(B)*, which prohibits a lawyer from continuing multiple representations if his exercise of independent professional judgment is, or will likely be, affected adversely by his representation of another client; and
> *D.R. 7-101(A)(3)*, which prohibits a lawyer from damaging or prejudicing his client during the course of representation.

## DISCUSSION

From the record it is clear that Respondent sought to represent three sets of interests: the Tates', the Spaughs' and his own. In the course of doing so, he violated the three Code sections cited. His conduct constitutes a flagrant breach of the Code of Professional Responsibility.

Respondent's misconduct derives in large measure from an unawareness of who his clients were. Much of his defense is premised upon a mistaken position that Dr. Tate was not his client and, indeed, was a "stranger to the transaction."

The evidence of record points clearly to an attorney-client relationship between Respondent and Dr. Tate.

According to his own testimony, Respondent: was "technically" representing Dr. Tate in January, 1982; was first contacted by Dr. Tate concerning a sale of the residence; negotiated his 8% fee with Dr. Tate; discussed with

Dr. Tate improvements to be made on the residence; discussed with Dr. Tate potential purchasers; talked regularly with Dr. Tate during the period the residence was on the market; recognized that Dr. Tate was conducting the business for the family; took the Spaugh contract to Dr. Tate for approval; obtained approval for the estimate of seller's costs because Dr. Tate was the primary adult party with whom Respondent dealt.

Respondent's claim that he had no attorney-client relationship with Dr. Tate is totally without merit.

Equally without merit is Respondent's denial of any representation of the minor daughter. Respondent was retained to effect a sale of the residence, one-fourth of which belonged to the minor. Had the sale to the Spaughs been consummated, the minor was responsible for her portion of Respondent's fee.

Notwithstanding the foregoing, Respondent instituted the lawsuit to evict the Tates and the minor. His rationalization that the lawsuit was compelled by (1) his obligation to the three adult daughters and (2) the right of the Spaughs to specific performance of the contract of sale is frivolous and a sham.

The adult daughters, immediately upon learning of the Spaugh contract, protested the proposed sales price and revoked their powers of attorney previously executed in Respondent's favor.

With respect to the Spaugh's right to compel the sale, Respondent well knew that the contract with the Spaughs, prepared and signed by him, contained a provision requiring court approval for the sale of the minor's interest. Such approval was not obtained and, moreover, Respondent was specifically advised that the minor would oppose the Spaugh sale.

Despite these facts, Respondent instituted against his own client a suit in eviction, a proceeding recognized as sensitive and hostile.

While he otherwise stoutly defends his actions and conduct, Respondent does concede in his brief that filing of the *lis pendens*, which he later withdrew, was improper.

## CONCLUSION

Dr. Tate retained Respondent to aid in the sale of a residence, a service ordinarily reserved to realtors.

The retainer was permissible and proper, but it cast Respondent in a role which enhanced the risk of a conflict of interest. In this case the risk became the reality. Nothing supports this conclusion more graphically than his acceptance of a fee from the Spaughs, notwithstanding it was to be credited to his clients.

In previous matters we have addressed the hazards of this risk. Attorneys should consider carefully client representation involving business transactions, especially where, as here, one of the clients is a minor.

A most disturbing aspect of this matter is Respondent's failure, or refusal, to recognize the very nature of the attorney-client relationship. It is patent from his actions and decisions throughout that he lacks a basic understanding of that relationship.

In filing an action, *as the party plaintiff*, to evict his own clients, one a minor, he disserved the legal profession.

We agree with the Board's finding of misconduct. While there is substantial thinking on the part of the Court that this Respondent should be suspended for a specified period of time, it is the consensus of thinking that he should be, and he is hereby, publicly reprimanded.

Public reprimand.

HARWELL, J., not participating.